IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


DAVID L. BATTLE,                          )
                                          )
            Plaintiff                     )
                                          )
      v.                                  )      Civil No. 17-23
                                          )
RAY MABUS, in his official                )
capacity as the Secretary of the Navy,    )
and the DEPARTMENT OF THE NAVY,           )
                                          )
            Defendants.                   )


## MEMORANDUM OPINION

BLOCH, District J.

      Presently before the Court are Defendants' Motion to Dismiss, or in the Alternative, for

Summary Judgment (Doc. No. 11), and Plaintiff's Cross-Motion for Summary Judgment (Doc.

No. 20). After consideration of the parties' submissions, and for the reasons set forth herein,

Defendants' motion will be granted to the extent it seeks dismissal of Plaintiff's Complaint as

untimely and denied to the extent that it seeks an entry of summary judgment, and Plaintiff's

motion will be denied. Accordingly, as discussed herein, the Court will dismiss this matter for

lack of subject matter jurisdiction.

      **I.**      **Background**

      **A.**      **General**

      This case arises from Plaintiff David L. Battle's service in the United States Marine

Corps, which began on February 7, 1973, and ended on May 21, 1976, when he was discharged

as "other than honorable." Plaintiff subsequently tried to have this designation changed to

"honorable" on several occasions, but his requests were denied. Plaintiff now alleges that the Board for Correction of Naval Records ("BCNR"), in its most recent decision dated November 16, 2016, failed to correct the error and injustice in his record, and seeks relief from this Court.

10 U.S.C. § 1552 authorizes the Secretary of the United States Navy, acting through civilian boards, to correct an error in, or remove an injustice from, the records of current and former members of the Navy or the Marine Corps.[1] See id. at § 1552(a)(1). The BCNR is the civilian board established by the Secretary to perform this task. See 32 C.F.R. § 723.2. It accepts new applications for the correction of records, and also petitions for reconsideration of prior final adjudications. See id. at §§ 723.3, 723.9. While Section 1552 does not itself provide for judicial review of a BCNR decision, actions challenging such decisions can be brought under statutes such as the Administrative Procedures Act, 5 U.S.C. §§ 701-06. As the Court will discuss at length below, such actions are generally governed by the six-year statute of limitation set forth in 28 U.S.C. § 2401(a).

### B.  Allegations in the Complaint

Plaintiff filed his Complaint in this matter on January 9, 2017, seeking for the Court to review the adverse decision of the BCNR dated November 16, 2016, pursuant to 5 U.S.C. § 702. (Complaint, Doc. No. 3 at ¶ 1).[2] Plaintiff states that he is a veteran of the United States Marine Corps who served from February of 1973 to May of 1976. (Id. at ¶¶ 2, 5). He alleges that, although he had been recommended for administrative separation for a number of instances of minor misconduct, he was not immediately discharged, but rather remained in service while a

---

[1]    The Marine Corps is an organizational unit of the Navy; therefore, Marines go through the same process as members of the Navy.

[2]    Although the Complaint itself does not cite to Section 702 as the basis for the Court's review, the Civil Cover Sheet filed therewith confirms that the action has been brought pursuant to that statute.

disability discharge was being processed on his behalf. (Id. at ¶¶ 6-8). During that process, an Assistant Judge Advocate General ("AJAG") declined to approve a disability discharge, and instead directed that Plaintiff be separated pursuant to the administrative separation. Plaintiff alleges, though, that the AJAG lacked authority to withhold approval and final adjudication of the disability separation under the Navy's regulations applicable at the time. (Id. at ¶¶ 10-11).

Plaintiff asserts that, after his discharge in May of 1976, he requested correction of his military records in the form of a discharge upgrade, which was denied by the BCNR in 1978. (Id. at ¶ 12). In or around 2015, Plaintiff requested reconsideration of this decision, purportedly based upon new argument and/or evidence. (Id. at ¶¶ 12-13). As part of this request, Plaintiff argued that the AJAG lacked authority to withhold approval of Plaintiff's medical separation and to direct instead that he be separated administratively. He further argued that he had inappropriately been held past his enlistment contract. Despite these arguments, the BCNR denied his request on November 16, 2016. (Id. at ¶¶ 17-18, Ex. A). Plaintiff contends that the BCNR's decision was arbitrary, capricious, and otherwise not in accordance with the law. (Id. at ¶¶ 17-18). Accordingly, he seeks for the Court to reverse the BCNR's decision, direct that his records be corrected, and award attorney fees and costs. (Id. at 5).

Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Among their arguments is that the Complaint is time-barred by the relevant statute of limitation, 28 U.S.C. § 2401(a), asserting that the relevant "final decision" of the BCNR was the 1978 decision, rather than the 2016 decision. Plaintiff disagrees and argues that the case is, in fact, timely. He has further filed a cross-motion for summary judgment.

## II.    Standard of Review

While the central issues in this case are fairly clear, the proper procedural vehicle for adjudicating them is less so.  As noted, Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) on timeliness grounds.   Whether this statute of limitation argument is properly raised under Rule 12(b)(6), arguing a failure to state a claim upon which relief may be granted, or under Rule 12(b)(1), arguing a lack of subject matter jurisdiction, is a somewhat unsettled issue.[3]  This is because it is not settled whether the limitation period set forth in Section 2401(a) is jurisdictional in nature.  See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 145 (2008) (Ginsberg, J., dissenting).  Another judge in this District, the Honorable Kim Gibson, recently found that Section 2401(a) was jurisdictional in nature.  See Kannikal v. Holder, Civ. No. 3:12-220, 2014 WL 917342, at *4 (W.D. Pa. Mar. 10, 2014).  Judge Gibson recognized that, almost 40 years earlier, the Third Circuit had found the protections of Section 2401(a) to be non-waivable and jurisdictional.  See United States v. Sams, 521 F.2d 421, 428 (3d Cir. 1975).  While the district court's decision in Kannikal was reversed on other grounds, the Third Circuit did not address or question the court's reliance on Sams.  Although much has happened in regard to the question of whether Section 2401(a) is jurisdictional since 1975, this Court, like Judge Gibson in Kannikal, finds that the Third Circuit's decision in Sams continues to provide the most authoritative statement by the Circuit on this issue and finds, therefore, that filing within the time frame permitted by Section 2401(a) is a jurisdictional requirement.  See also Yelverton v. Dep't of the Army, Civ. No. 13-4495, 2014 WL 4413610, at *4 (E.D. Pa. Sept. 5, 2014).  It will therefore consider Defendants' statute of limitation arguments pursuant to Rule 12(b)(1).

---

[3]    Although Defendants brought their motion under Rule 12(b)(6), and not 12(b)(1), the Court is permitted to, and indeed has the obligation to, raise the issue of subject matter jurisdiction *sua sponte*.  See Bedell v. United States, 669 Fed. Appx. 620, 621 n.1 (3d Cir. 2016).

Under Rule 12(b)(1), the standard of review depends on whether the challenge to the court's subject matter jurisdiction is facial or factual. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Statute of limitation challenges commonly call for the court to look beyond the pleadings and therefore constitute factual challenges. See, e.g., Wright v. United States, Civ. No. 3:13-cv-223, 2014 WL 1910498, at **1-2 (M.D. Pa. May 13, 2014); Anjelino v. New York Times Co., Civ. No. 92-2582(AMW), 1993 WL 170209, at *5 (D. N.J. May 14, 1993). In considering such a challenge, a court may consider evidence outside of the pleadings, see Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000), and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claim." Mortensen, 549 F.2d at 891. In fact, the plaintiff has the burden of proving jurisdiction, and the court can weigh the evidence in determining whether that burden has been met. See id.; Harris v. Kellogg Brown & Root Servs., Inc., 724 F.3d 458, 464 (3d Cir. 2013).

The Court notes, however, that the result in this case would be the same under Rule 12(b)(6). It is true that, in considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the Court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)); see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). However, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a

legal conclusion couched as a factual allegation.'" Iqbal, 556 U.S. at 678 (quoting Twombly,

550 U.S. at 555 (internal citation omitted)).

Under the law of the Third Circuit, statute of limitation defenses can properly be raised

under Rule 12(b)(6).  See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002).  In

considering a defense so raised, a court, in general, is to focus on the four corners of the

complaint itself to determine whether it is timely.  See id.; Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994).  However, the court may also consider matters of

public record, orders, exhibits attached to the complaint, and items appearing in the record of the

case.  See 38 F.3d at 1384 n.2.  The court can also consider documents "'integral to or explicitly

relied upon in the complaint'" without converting the motion into one for summary judgment.

Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec.

Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).  What matters is not whether the complaint cited the

extrinsic document, but rather whether the claims are based on it.  See id.  As the Court will

explain below, the extrinsic documents upon which it relies to reach its decision, all of which are

part of the administrative record in this case,[4] are arguably public records and are certainly

integral to or specifically relied upon in the Complaint.[5]

Accordingly, although the Court is rendering its ruling pursuant to Rule 12(b)(1), it

ultimately makes no practical difference what procedural vehicle the Court uses.  All arrive in

---

[4]     The administrative record is Exhibit A to Defendants' pending motion.  (Doc. No. 13).
In citing to this record the Court will, as the parties have, refer to the page numbers as "AR."

[5]     The Court notes that it could also consider Defendants' motion as one for summary
judgment pursuant to Rule 56, which, of course, would permit the Court to rely on the
administrative record.

the same place at the end.  Indeed, there really are no issues of fact in this case, just issues as to what those facts mean.[6]

### III.     **Discussion**

As noted, the issue here is whether Plaintiff's action is timely pursuant to 28 U.S.C. § 2401(a).[7]  That statute provides that a civil action must be commenced against the United States within six years after the right of action first accrues.  See id.  In the context of reviewing a BCNR decision, the right of action first accrues when the board issues its final decision.  See Green v. White, 319 F.3d 560, 563 (3d Cir. 2003).  Here, there are two possible final decisions by the BCNR – the 2016 decision that is well within the limitation period and the 1978 one that is well outside of it.  The parties naturally disagree as to which of these decisions is the relevant one for purposes of Section 2401(a).  Determining which one of them is right requires a closer look at both decisions, and at the applicable law.

The Third Circuit provided this Court with the framework for making its decision in Green.  In that case, much like here, the plaintiff sought for his military records to be amended so that his "Undesirable Discharge" would be upgraded to "Honorable."  As in this case, the plaintiff had filed multiple petitions for review to the appropriate reviewing board, originally in 1981 and again in 1983, 1986, and 1999.  All were denied, the final one on October 19, 2000, and he subsequently brought his federal action.  The issue there, as here, was which board decision was the relevant one for determining whether his court action was timely under Section 2401(a).  See 319 F.3d at 562-63.  The Third Circuit noted that such a claim accrues when the

---

[6]     The Court notes that adjudication under Rule 12(b)(1) also benefits Plaintiff in that it will not constitute a judgment on the merits of his claim.  See Mortensen, 549 F.2d at 891.

[7]     The parties do not dispute that the limitation period under Section 2401(a) applies to actions under 5 U.S.C. § 702, and, indeed, it does.  See Green v. White, 319 F.3d 560, 563 (3d Cir. 2003); National Ass'n of Manufacturers v. Dep't of Defense, 138 S. Ct. 617, 626-27 (2018).

board "issue[s] its final decision."  Id. at 563 (quoting Dougherty v. U.S. Navy Board for Correction of Naval Records, 784 F.2d 499. 501 (3d Cir. 1986)).  It therefore had to determine whether the last decision had re-opened the case, thereby creating a new final decision and a new accrual date.[8]

In examining the issue, the Third Circuit considered the approaches of several different courts, but eventually acknowledged the crucial distinction between reconsideration petitions that allege new evidence or changed circumstances and those that merely allege material error. See id. at 565.  Accordingly, the Circuit Court held that any petition for rehearing which does not include "new evidence" or reflect "changed circumstances" does not re-start the six-year limitation period under Section 2401(a).  On the other hand, the court held, if the military review board re-opens a proceeding and rules on a petition that does, in fact, contain new evidence or changed circumstances, that new ruling would constitute the relevant final agency action.  See id. at 566.  After finding that the board did consider new evidence in adjudicating the plaintiff's 1999 petition, the court found that the board's 2000 decision re-opened the proceedings and that the six-year limitation period should run from then.  See id. at 567.

Much as in Green, the issue here is whether the BCNR should be considered to have re-opened the proceedings from 1978 based on new evidence and/or changed circumstance in its 2016 decision.  Unlike the situation in Green, though, the answer here is that it did not.  While the BCNR's 2016 decision is not a model of clarity on the issue, the Court finds that it did not re-open the proceedings and did not consider new evidence or changed circumstances.

What was new in the BCNR's 2015-16 proceedings from its 1978 proceedings was Plaintiff raising two new positions: (1) that the AJAG who withheld approval of Plaintiff's

---

[8]     There was no issue in that case as to whether the 1983 or 1986 decisions constituted the final board action.

medical separation and directed instead that he be separated administratively in 1976 lacked the authority to do so; and (2) that Plaintiff had inappropriately been held past his enlistment contract.  The second of these new positions is clear enough on its face and requires no further discussion.  The first, however, requires a little more background as to what happened in 1975 and 1976, as set forth in the administrative record.

As discussed above, Plaintiff by his own admission, was disciplined a number of times for incidents of misconduct.  Accordingly, in July of 1975, administrative separation proceedings were initiated against him.  (AR 249). On September 11, 1975, the Administrative Discharge Board recommended that he be separated from the Marine Corps as "Other than Honorable." (AR 240-42).   His Commanding General approved the recommendation of the Discharge Board on September 30, 1975, and Plaintiff was to be discharged on October 17, 1975.  (AR 20, 238). However, this discharge was deferred while Plaintiff sought treatment for a knee injury.  (AR 164).  In late January of 1976, after intervention from Plaintiff's Representative in Congress, the Honorable William Moorhead, proceedings were commenced to see if Plaintiff, alternatively, would qualify for a disability discharge.  (AR 40).  Both the Physical Evaluation Board and the Physical Review Council recommended that he be discharged as disabled with a 20 per cent permanent disability rating.  (AR 30-31).  The matter was referred to the Secretary of the Navy for final action.  (AR 31).

It is here where Plaintiff alleges, and Defendants do not dispute, that the procedure went awry.  The AJAG, pursuant to the governing regulations at the time, was delegated the Secretary's authority to approve the recommendation of a disability discharge.  However, the AJAG did not approve this recommendation, but rather, on March 31, 1976, indicated that no action be taken and that Plaintiff "be discharged under other provisions of law."  (AR 34).

Accordingly, Plaintiff was administratively involuntarily separated on May 21, 1976. (AR 149, 164). Plaintiff's argument, raised before the BCNR in 2015-16, was that the AJAG's actions violated the now-repealed regulation at 32 C.F.R. § 725.083, as the AJAG could only approve disability recommendations and disapprovals required personal review by the Secretary. (AR 9-18).

The parties do not seem to question the fact that these issues were new to the 2015-16 proceedings before the board in that they had not been raised in the 1978 proceedings. They also do not dispute that the BCNR considered and addressed these issues in its 2016 decision. Where they disagree is as to whether the board's actions constituted a re-opening of the 1978 proceedings.

Plaintiff argues that the BCNR's consideration of these new issues was sufficient to constitute a re-opening of his case for several reasons. First, he claims that there was actually new evidence in the 2015-16 proceedings – the March 31, 1976 AJAG decision withholding approval of his medical separation (AR 32-35), and excerpts from the 1971 Federal Register and Marine Corps Separation and Retirement Manual.[9] New evidence, for purposes of reconsideration of a BCNR decision, is "evidence not previously considered by the Board and not reasonably available to the applicant at the time of the previous application." 32 C.F.R. § 723.9. To understand why the evidence to which Plaintiff points does not meet this definition, it is necessary to look at the BCNR's April 21, 1978 decision. In that decision, the BCNR stated that it had considered Plaintiff's application, "together with all material submitted in support thereof, naval records, and pertinent statutes, regulations and policies." (AR 164). The 1971 Federal Register and the Marine Corps Separation and Retirement Manual clearly fit within this

---

[9] Plaintiff does not identify any new evidence regarding his claim that he was held in the Marine Corps past the end of his enrollment contract. Suffice to say, any such evidence clearly would have been available in 1978.

description, as they would have been pertinent regulations and policies. Even if this were not the case, there is no basis for finding that they were not reasonably available to Plaintiff at the time. The Federal Register was undoubtedly available, and there is no reason a Marine policy manual would not have been either. Indeed, Plaintiff does not really offer an argument to the contrary.

What he does argue is that there is no way to verify whether the March 31, 1976 AJAG decision was necessarily included within the "naval records" reviewed by the board in 1978. However, regardless of whether that particular document was before it, the board was well aware of the nature of the AJAG's decision when it rendered its own decision in 1978. On the second page of its decision, the BCNR expressly noted:

> At the time of your discharge the Judge Advocate General
> reviewed the disability proceedings and your disciplinary record,
> and recommended that you be administratively separated with an
> undesirable discharge even though your disciplinary record was
> incomplete and he considered only six nonjudicial punishments
> and one summary court-martial.

(AR 165). The AJAG decision that Plaintiff claims to be new actually addressed the disability proceedings not only of Plaintiff, but of a number of other naval personnel. It did, nonetheless, state in regard to Plaintiff's potential disability discharge, "No action taken; member[] to be discharged under other provisions of law." (AR 34). The language in the 1978 BCNR decision appears clearly to reference this AJAG decision, which was prepared a relatively short time (around six or seven weeks) prior to Plaintiff's date of discharge. At the very least, it demonstrates that the board was aware that an AJAG, and not the Secretary of the Navy, had rendered the decision that Plaintiff was not to be given a disability discharge.

Plaintiff argues, in a footnote, that this reference in the 1978 decision could be to a different memorandum prepared on September 23, 1975. (AR 239). However, that is simply not plausible. The memorandum to which Plaintiff refers was not from the Office of the Judge

Advocate General, as was the March 31, 1976 memo at issue here, but from the Office of the Staff Judge Advocate. (Id.). While Staff Judge Advocates are a part of JAG, they are a specific office therein, and the BCNR specifically cited the JAG office, and not the Staff Judge Advocate office, as the relevant entity. Moreover, the September 23, 1975 Staff Judge Advocate memo makes no reference to Plaintiff's disability proceedings. (Id.). Indeed, there is a good reason for this; the proceedings for a disability discharge on Plaintiff's behalf had not even commenced at the time this memorandum was prepared, and would not commence until January of 1976. (AR 40). The 1978 BCNR decision was clearly not referring to this document.

Therefore, the BCNR, which, again, purported to have reviewed Plaintiff's naval records at the time it rendered its decision, was either aware of the March 31, 1976 memorandum or was at least aware of the material aspects of the decision. At best, the physical record Plaintiff asserts to be new evidence would do no more than provide cumulative evidence of a fact of which the board was well aware. Further, given the presumption of regularity that applies to such proceedings, see 32 C.F.R. § 723.3(e)(2), there is no basis to find that the BCNR did not have access to a document that would have been part of the record. Regardless, the fact that it was apparently known at the 1978 proceeding that an AJAG had made the decision as to Plaintiff's disability discharge proceedings would demonstrate that evidence of this fact was reasonably available at the time.[10]

The second way in which Plaintiff attempts to argue that the issues raised during the 2015-16 proceedings operate to re-open the proceedings is by claiming that not just new

_____

[10]    It certainly does not appear that the significance of the fact that the AJAG, and not the Secretary, made the determination as to Plaintiff's disability discharge proceedings was at issue in 1978. However, as discussed below, a new appreciation of the significance of a piece of evidence is not the same as new evidence. There is no real question that the BCNR was aware of the AJAG's involvement in the process, whether the board or anyone else questioned the significance of that fact at the time.

evidence, but also new argument is sufficient to re-open a decision for purposes of 2401(a). This position, though, is inconsistent with the general distinction between legal evidence and legal argument. In both civil and criminal cases, the Third Circuit Model Jury Instructions provide for an instruction that arguments of counsel are not evidence. <u>See</u> Criminal at § 3.02, Civil at § 1.5. Evidence is generally defined as something that tends to prove or disprove the existence of an alleged fact, or the collective mass of such things. <u>See</u> <u>Black's Law Dictionary</u> (8th Ed.) at 595. Argument, on the other hand, is defined as an attempt to persuade. <u>See</u> <u>id.</u> at 114. In other contexts, courts have made it clear that new evidence "does not include new legal theories or new interpretations of the legal significance of the evidence." <u>United States v. Olender</u>, 338 F.3d 629, 635 (3d Cir. 2003). Similarly, it is well-established in the criminal context that a new appreciation of the significance of a piece of evidence is not itself new evidence. <u>See</u> <u>United States v. Cimera</u>, 459 F.3d 452, 459-60, n.10 (3d Cir. 2006) (collecting cases). While this case law is not binding in this case, it does demonstrate the stark difference between new evidence and a new legal theory or observation regarding already existing evidence. Plaintiff, in 2015-16, offered new argument attaching new significance to facts already in evidence, not actual new evidence.

Plaintiff further suggests that the December 23, 2016 amendment to 10 U.S.C. § 1552(a)(3), particularly the addition of subsection (D), pertaining to requests for reconsideration of a military records correction board, provides for a different result. That subsection states:

> Any request for reconsideration of a determination of a board under this section, no matter when filed, shall be reconsidered by a board under this section if supported by ***materials*** not previously presented or considered by the board in making such determination.

Id. (emphasis added).  See also P.L. 114-328 (Dec. 23, 2016).  There are two problems with this argument.  First, while Section 1552 has been referenced a lot, this case was not brought under that section, nor does it apply to district court proceedings in any way.  Likewise, the Third Circuit's decision in Green as to the operation of the limitation period pursuant to Section 2401(a) was not based in any way on Section 1552, and, in fact, the court only briefly mentioned the statute in another context.  See 319 F.3d at 564 n.3.  The Circuit's finding actually applied to a broader range of cases than merely those whose administrative proceedings are governed by Section 1552.  It is important to remember that the Court here is determining the nature of the BCNR's decision in 2016, i.e., whether it actually reopened his 1978 case, for purposes of determining the timeliness of this action, not whether the information presented in 2016 would warrant a re-opening today.

Even assuming that the amendment to Section 1552 is relevant, it still does not change the result in this case.  Plaintiff argues, without legal support, that new "materials" is a broader concept than new "evidence," and that it would include new argument.  This does not comport, though, with the meaning of the word "materials," which derives from the Latin terms *materialis* and *materia*, meaning pertaining to matter.  Moreover, the statute was not amended to change the term from "evidence" to "materials;" subsection (d) was inserted to add specificity to the statute, not necessarily to change the way in which it is to be interpreted.  In the overall context of the statute and legislative history, there is no basis for finding that the term "materials" was meant to encompass legal argument.

The Court, therefore, finds no new evidence or changed circumstances that would warrant re-opening the BCNR's 1978 decision.[11]  The question remains, though, whether the

---

[11]     Neither party attempts to address whether the issues presented before the BCNR qualified as "changed circumstances," nor does it appear from the record that there were any changed

board, albeit erroneously, did believe itself to be re-opening the proceedings on this basis.  As the Court noted above, the BCNR's 2016 decision was not a model of clarity in indicating whether it deemed Plaintiff to be providing new evidence or whether it was re-opening the 1978 case, or declining the request to do so.  The decision does state that "new information" was presented to the board.  However, as the Third Circuit emphasized in <u>Green</u>, "[]only when the agency has clearly stated or otherwise demonstrated that it has reopened the proceedings will the resulting agency decision be considered to be a new final order."  319 F.3d at 567 (quoting <u>Sendra Corp. v. Magaw</u>, 111 F.3d 162, 167 (D.C. Cir. 1997)) (internal quotations omitted).  "[E]ven if 'the agency discusses the merits at length when it denies a request for reconsideration [that] does not necessarily mean the agency has reopened the proceedings.'"  <u>Id.</u>  Given that the BCNR used the more general term "information," which is arguably is broad enough to include argument, rather than evidence or material, it did not clearly indicate that it was considering new evidence or changed circumstances.  Moreover, it clearly made no finding as to whether any of the information provided was reasonably available to Plaintiff at the time of his previous application.

---

circumstances between 1978 and 2016.  Again, it was the import of what happened, not what actually happened, that is alleged to have changed.

**IV.**   **Conclusion**

Because the BCNR did not clearly re-open the 1978 case, and because it is clear to the

Court that no new evidence or changed circumstances were presented, the Court does not find

the board's 2016 decision to have re-opened the proceedings in this case.   As such, the BCNR's

1978 decision is the agency's final decision, and the Section 2401(a) clock began to run then.

Accordingly, the present action was not brought within the requisite time limit and must be

dismissed.


<u>s/Alan N. Bloch</u>
Alan N. Bloch
United States District Judge


Date:   March 30, 2018

ecf:   Counsel of Record